# IN THE
# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) No. 21 CR 640 |
| v. | ) |
| | ) Judge Matthew F. Kennelly |
| KARL TAYLOR | ) |

## RESPONSE TO THE GOVERNMENT'S MOTIONS IN LIMINE AND DEFENDANT'S SUPPLEMENTAL MOTIONS IN LIMINE

### I. DEFENSE'S RESPONSE TO GOVERNMENT'S SUPPLEMENTAL MOTION *IN LIMINE* TO PRECLUDE THE ADMISSION OF POST ARREST STATEMENTS

KARL TAYLOR, by the Federal Defender Program and its attorney, PIYUSH CHANDRA, respectfully submits this response to the government's supplemental motion *in limine* [Dkt. 36] and asks the court to enter an order denying the government's motion from precluding defendant from introducing and using post-arrest statements.

### FACTS

On or about June 22, 2021, officers from the Chicago Police Department ("CPD") office approached Karl Taylor, ("Mr. Taylor"), and the group of individuals Mr. Taylor was a part of. This event happened in the area of North Parkside Avenue and West Iowa Street in Chicago, Illinois. Before the officers could reach the group of individuals, Mr. Taylor fled on foot onto North Parkside Avenue. CPD officers pursued Mr. Taylor. During this pursuit, the body-worn cameras of the CPD Officers were on. The government alleges that Mr. Taylor supposedly threw a firearm – a Remington Arms Co. 9mm semiautomatic handgun, serial number 0026796R51,

1

("the firearm") – into the backyard of a residence that is located at 923 North Waller Avenue as he ran past that yard. Mr. Taylor denies this assertion.

Officers were in pursuit of Mr. Taylor, down a street, through a gangway, down an alley, and on another street before he was arrested after attempting to jump over a chain-liked fence. CPD body cam videos recording both audio and video of Mr. Taylor's stop. Mr. Taylor is seen exasperated, sweating and exhausted. Without any questioning by the police, as he is being stopped and placed under arrest, Mr. Taylor states words to the effect of:

> I'm on probation man…my baby's mother called you all? I did not touch her. She's lying I didn't touch her. I knew she was on some bullshit. I only got a bag of weed. My baby mother is lying…she grabbed me…she grabbed me…she grabbed me…She pulled up on me…I knew she was on that.

As discussed below, these statements should be admitted on alternative basis. First, they are not hearsay statements as they are not being offered for their truth but rather to provide context and explanation as to why Mr. Taylor did what he did. Run from the police. If the court determines that these statements are hearsay, they follow under the hearsay exception of excited utterances.

## LAW AND ARGUMENT

A. THE GOVERNMENT MOTION *IN LIMINE* SHOULD BE DENIED BECAUSE MR. TAYLOR'S POST-ARREST STATEMENTS ARE NOT HEARSAY AND ARE NOT BEING OFFERED TO ESTABLISH THE TRUTH OF THE MATTER ASSERTED.

The government's motion *in limine* should be denied by the court because Mr. Taylor is not seeking to introduce his post-arrest statements for the truth of the matter asserted, but rather to provide context for his flight from the police.

Under the Federal Rules of Evidence 801(c) a hearsay statement is an out-of-court statement submitted for its truth. Rule 802 categorically bars hearsay, unless the statement can be

categorized into one of the exceptions in Rules 803 or 804. "However, statements may be offered for reasons other than the truth without falling afoul of the second prong of 801(c). "If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay." Fed.R.Evid. 801 advisory committee's note (citing *Emich Motors Corp. v General Motors Corp.*, 181 F.2d 70 (7th Cir., 1950) rev'd on other grounds, 340 U.S. 558 (1951)). "It is well-settled that statements that are offered for context, and not for the truth of the matter asserted, are not hearsay as defined in Rule 801 of the Federal Rules of Evidence." *U.S. v. Bermea-Boone*, 563 F.3d 621, 626 (7th Cir., 2009) (citing *United States v. Macari*, 453 F.3d 926, 941 (7th Cir., 2006)). "If… an extrajudicial utterance is offered, not as an assertion to evidence the matter asserted, *but without reference to the truth of the matter asserted*, the hearsay rule does not apply." *U.S. v. Linwood* 142 F.3d 418, 425 (7th Cir. 1998) (internal citations omitted, emphasis in original). "The case law of this Circuit leaves no doubt that this is a non-hearsay purpose." *Id.*, citing *United States v. Sanchez*, 32 F.3d 1002, 1005 (7th Cir. 1994).

In *Bermea-Boone*, the court ruled that the transcribed telephone conversations between that defendant and a co-conspirator were offered to provide context "for Bermea-Boone's admissions concerning the drug conspiracy and to make those admissions intelligible for the jury." 563 F.3d at 626. In *Linwood*, the defendant contested a witness' statement during a search on where to find cash from the sale of drugs on the ground that the statement was used to show that Linwood sold drugs. 142 F.3d at 425. However, that court denied Linwood's argument, stating that the witness' statements to the searching officer were used to show why the officer acted the way he did. *Id*.

Mr. Taylor post-arrest statements at the scene of his arrest are to provide the jury context as to why he ran and not for the truth of any element of the charged offense. Unlike the Government's assertions that Mr. Taylor's statements would confuse the jury or would be offered as truth, it clarifies and gives reasons to the jury for why he did what he did. The government is free to argue what weight these statements should be given, but they are not hearsay as they are not being offered for the truth to any element of the indictment.

Thus, Mr. Taylor's post-arrest statements provide context to his actions are not hearsay under the Federal Rule of Evidence 801(c) and this Court should deny the Government's motion in prohibit their admission.

B. THE GOVERNMENT'S MOTION *IN LIMINE* SHOULD BE DENIED AND MR. TAYLOR ALLOWED TO USE HIS POST-ARREST STATEMENTS UNDER THE EXCITED UTTERANCE EXCEPTION.

As discussed in Section I, *supra*, Mr. Taylor's post arrest statements are not hearsay. However, should this court find otherwise, the hearsay exception contained in Fed. Rule Evid. 803(2) applies, and the post-arrest statements should be admitted.

The Federal Rule of Evidence 803(2) states "a statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused" is excepted from the general prohibition against hearsay. Fed.R.Evid. 803(2). , In the Seventh Circuit, this has required "(1) a startling event must have occurred; (2) the declarant must make the statement under the stress of the excitement caused by the startling event; and (3) the declarant's statement relates to the startling event." *United States v. Zuniga*, 767 F.3d 712, 716 (7th Cir. 2014)(citing *United States v. Joy*, 192 F. 3d 761, 766 (7th Cir. 1999)). Furthermore, in *United States v. Joy*, "[t]his exception is premised on the belief that a person is unlikely to fabricate lies (which presumably takes some deliberate reflection) while his mind is preoccupied with the stress of the

4

exciting event." 192 F.3d 761, 766 (7th Cir. 1999)(brackets added); (citing *Martinez v. McCaughtry*, 951 F.2d 130, 134 (7th Cir. 1991); *Ferrier v. Duckworth*, 902 F.2d 545, 548 (7th Cir. 1990). The utterance should be "contemporaneous with the excitement engendered by the startling event." *Joy*, 192 F.3d at 766 (brackets added)(citing *Webb v. Lane*, 922 F.2d 390, 394 (7th Cir. 1991); *Martinez*, 951 F.2d at 135, *see also United States v. Boyce*, 742 F.3d 792, 795-796 (7th Cir. 2014)). "Of course, a court need not find that the declarant was completely incapable of deliberative thought at the time he uttered the declaration." *Joy*, 192 F.3d at 766 (citing *Martinez*, 951 F.2d at 135). Moreover, "[a]n excited utterance need not be contemporaneous with the startling event to be admissible under Rule 803(2)." *Joy*, 192 F. at 766 (citing *United States v. Tocco*, 135 F.3d 116, 127 (2d Cir. 1998)(brackets added)).

In *Zuniga*, the defendant held a gun to his ex-girlfriend's head while witnesses were present at the scene. 767 F.3d at 717. A witness observed the scene and whispered to a fourth person present that Zuniga had a gun. *Id*. Zuniga claimed that the statement was not made under stress nor excitement because the witness did not raise his voice "as opposed to blurting out" that Zuniga had a weapon. *Id*. "A declarant whispering, as opposed to yelling, does not necessarily mean that the statement cannot qualify as an excited utterance." *Id*. The witness's testimony at trial supported his assertions that he acted to reduce the chances of a potentially fatal confrontation in the presence of a deadly weapon. *Id*. at 716-17. The court found the witness's statements otherwise met the three-fold requirements as set out in the Seventh Circuit. *Id*. at 717. The witness only took a few seconds to confer what he had seen to the other person present with him and was still acting under the stress of the threat. *Id*.

Police body cam videos show Mr. Taylor to be exhausted, hot, and exasperated after a fast paced chase by the police. It was an obvious "excitable" set of circumstances. In that excited and frantic state he made these post arrest statements without prompting.

Mr. Taylor made this statement immediately after his arrest, which is similar to the timing in *Zuniga* and *Joy*. In *Joy*, that declarant made the challenged statements "a few minutes" after "a heated argument." 192 F.3d at 766. The declarant had been threatened with a firearm, and there was still audible shouting when the declarant called the 911 dispatcher. *Id*. Here, Mr. Taylor's statements better earn the excited utterance exception than the statements in *Joy*, as they were "spontaneous, excited, and impulsive." 192 F.3d at 766. Unlike in *Joy*, Mr. Taylor gave this statement on his own volition to police, not as a response to police questioning. As in *Joy* and *Zuniga*, Mr. Taylor did not have time to fabricate an excuse or a lie to explain why he had run because, he was too "preoccupied with the stress of [the] exciting event." 192 F.3d at 766. Under an excited utterance analysis, this court should deny the Government's motion and permit Mr. Taylor to use his post-arrest statements that were at the scene of his arrest.

For these reasons, Mr. Taylor would respectfully ask the Court to deny the government's supplemental motion *in limine* because Mr. Taylor seeks to use these statements for non-hearsay purposes; moreover, his statements also fall under the excited utterance exception.

**II. THE GOVERNMENT'S MOTION TO PROHIBIT ANY ARGUMNENT THAT A WITNESS HAS NOT TESTIFIED SHOULD BE DENIED. [Dkt. 23-5, § H].**

The government has the burden of proving each element of the indictment beyond a reasonable doubt through evidence and testimony that relates to each element. If the government fails to provide testimony or evidence tending to establish the proof of any element, the defense is entitled to point out the lack of testimony of evidence to the jury. Therefore, the defense

should not be barred from arguing that there was no witness or evidence to directly or indirectly establish a given fact relevant to the elements of the offense.

### III. THE GOVERNMENT'S MOTION TO INTRODUCE EVIDENCE AS TO THE NATURE OF MR. TAYLOR's PRIOR CONVICTIONS SHOULD HE TESTIFY SHOULD BE DENIED. [Dkt. 23-5, § I]

The government seeks to introduce evidence as to Mr. Taylor's 2009 armed robbery conviction and his 2012 conviction for aggravated battery of a police officer. The nature of these convictions are now at least a decade old have no bearing on this offense or Mr. Taylor truthfulness in 2022. Further, the nature of the charges are such that hearing that Mr. Taylor has committed an armed robbery and aggravated battery to a police officer (even over a decade ago), will create for a reasonable juror a high level of disdain and prejudice to Mr. Taylor if he were to testify in his own defense. For this reason, the nature of these convictions are not probative. The nature of these convictions will lead to unfair prejudice. would be far more prejudicial to a jury probative for a jury to hear. F.R.C.P. 403. Even a modest likelihood of prejudice to a jury is enough to outweigh the probative value of disclosing the nature of these two convictions. See, *United States v. Espinoza-Baza*, 647 F. 3d 1182, 1191(9th Cir. 2011).

### DEFENDANT'S SUPPLEMENTAL MOTIONS IN LIMINE.

#### I. THE TESTIMONY OF CPD OFFICER MATHHEW SAVAGE AS A FINGER PRINT EXPERT SHOULD BE BARRED.

On July 8, 2022, the government provided notice for the first time of its intent to call CPD officer Mathew Savage as a finger print expert to essentially explain to the jury why no finger prints of Mr. Taylor were not found on the recovered firearm. Accompanied with that notice was Mr. Savage's curriculum vitae to provide a foundation for his expertise.

The government also has an obligation to timely disclose its intention to call experts in its case in chief. Rule 16(a)(1)(G) of the Federal Rules of Criminal Procedure provides that where a defendant so requests, "the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial. . . . The summary provided . . . must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." The Seventh Circuit has stated that the government's notice will be deemed inadequate if it "provided a list of the general subject matters to be covered, but did not identify what opinion the expert would offer on those subjects." *United States v. Duvall*, 272 F.3d 825, 828 (7th Cir. 2001). "To help the defendant prepare for trial, the disclosure must summarize what the expert will actually say about those topics." *United States v. Williams*, 900 F.3d 486, 489 (7th Cir. 2018) (citing *Duvall*, 272 F.3d at 828).

As the Supreme Court has noted, "[t]estimony emanating from the depth and scope of specialized knowledge is very impressive to a jury. The same testimony from another source can have less effect." *Ake v. Oklahoma*, 470 U.S. 68, 82 n. 7 (1985). Consequently, when a party moves to introduce scientific, technical, or specialized expertise this Court is obligated, under Federal Rules of Evidence 104(a) and 702, to act as "gatekeeper" to ensure the evidence "is not only relevant, but reliable." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993); *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 141 (1999); *see Timm v. Goodyear Dunlop Tires N. Am., Ltd.*, 932 F.3d 986, 993 (7th Cir. 2019)

Rule 702 further requires that the evidence or testimony "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. This "newly expanded rule goes further than *Kumho* to 'provide . . . some general standards that the trial court *must* use to assess

the reliability and helpfulness of proffered expert testimony.'" *Rudd v. General Motors Corp.*, 127 F.Supp.2d 1330, 1336 (M.D.Ala. 2001) (emphasis in original). An expert "must show that his conclusions were the fruit of a rigorous, objectively-verifiable approach," and "even a 'supremely qualified expert cannot waltz into the courtroom and render opinions unless those opinions are based upon some recognized scientific method.'" *Timm*, 932 F.3d at 994 (quoting *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000).

The government must demonstrate that its expert's proposed testimony satisfies Rule 702 and 403. *United States v. Saunders*, 826 F.3d 363, 368 (7th Cir. 2016) (citing *Daubert*, 509 U.S. at 589) ("for expert testimony to be admissible, the proponent of the evidence must establish that the expert's testimony is reliable (and relevant) by a preponderance of the evidence").

The defense moves to bar the testimony of CPD Technician Matthew Savage on the grounds that the government's required notice under Rule 16 is deficient. In the alternative, the defense seeks to limit Officer Savage's testimony.

    A. *Inadequacy of Notice*

Per its letter dated July 8, 2022, the government plans to present evidence of CPD Evidence Technician Matthew Savage as an expert in the field of fingerprint analysis. That letter stated that Officer Savage would testify he found no latent finger prints on the firearm and may testify "regarding the recovery of fingerprint evidence generally, including the frequency with which fingerprints are recovered from guns, and why it is difficult to recover finger prints from guns." This is the full extent of the government's disclosure.

The government's disclosure is plainly deficient under Rule 16. It includes absolutely no detail about what opinions Officer Savage will offer on the subject of the "methods and conclusions" he used or arrived at in testing the firearm in question. Nor does it explain "the

9

types of forensic examinations that can be conducted" on firearms. There has been no notice of what Officer Savage "will actually say." *Williams*, 900 F.3d at 489.

The deficiency of the disclosure is prejudicial. The defense is aware that, in the past, Officer Savage has testified about topics that are arguably prejudicial and inadmissible. *See, e.g*, Part B, below. For this reason, it is imperative that the government make a fulsome disclosure so that the defense may identify any additional inadmissible topics and address them *in limine*. Otherwise, there is a significant possibility that Officer Savage may seek to testify about these inadmissible topics.

Given the late notice, the defense has had no time to meaningfully examine or investigate the accuracy of Officer Savage's C.V., training, and history. The defense is effectively placed in a position of accepting his qualifications as represented. The defense has been prejudiced and therefore Officer Savages's testimony should be barred.

*B. Evidence About Officer Savage's "Rates" Should be Barred.*

In the event that the Court permits Officer Savage to testify, the defense moves to bar particular anticipated testimony. Per the government's disclosure referenced above, Mr. Savage may testify about the types of forensic examinations that can be conducted on firearms and the frequency rates of recovery.

The defense is aware that Officer Savage has testified on other occasions in this district. On those occasions, as part of his testimony, Officer Savage has estimated the number of times he has conducted fingerprint examinations and the number of times he has recovered latent prints and prints suitable for comparison. His testimony has therefore included the anecdotal "rates" of recovery of prints and useable prints. He has also opined on whether the lack of recovery of prints was unexpected, given his anecdotal experience. Although the government has not

types of forensic examinations that can be conducted" on firearms. There has been no notice of what Officer Savage "will actually say." *Williams*, 900 F.3d at 489.

The deficiency of the disclosure is prejudicial. The defense is aware that, in the past, Officer Savage has testified about topics that are arguably prejudicial and inadmissible. *See, e.g*, Part B, below. For this reason, it is imperative that the government make a fulsome disclosure so that the defense may identify any additional inadmissible topics and address them *in limine*. Otherwise, there is a significant possibility that Officer Savage may seek to testify about these inadmissible topics.

Given the late notice, the defense has had no time to meaningfully examine or investigate the accuracy of Officer Savage's C.V., training, and history. The defense is effectively placed in a position of accepting his qualifications as represented. The defense has been prejudiced and therefore Officer Savages's testimony should be barred.

*B. Evidence About Officer Savage's "Rates" Should be Barred.*

In the event that the Court permits Officer Savage to testify, the defense moves to bar particular anticipated testimony. Per the government's disclosure referenced above, Mr. Savage may testify about the types of forensic examinations that can be conducted on firearms and the frequency rates of recovery.

The defense is aware that Officer Savage has testified on other occasions in this district. On those occasions, as part of his testimony, Officer Savage has estimated the number of times he has conducted fingerprint examinations and the number of times he has recovered latent prints and prints suitable for comparison. His testimony has therefore included the anecdotal "rates" of recovery of prints and useable prints. He has also opined on whether the lack of recovery of prints was unexpected, given his anecdotal experience. Although the government has not

indicated that this will be a topic addressed by Officer Savage in this particular case, out of an abundance of caution and based on a review of his previous testimony in other cases, the defense seeks an order *in limine* barring Officer Savage from introducing such evidence in this case.

The defense submits that this testimony and evidence is inadmissible under the 2000 amendments to Rule 702 because: (a) it is not based on relevant facts and data, and (b) it is not the product of reliable principles and methods. Furthermore, any possible and limited probative value of the proposed testimony and evidence is substantially outweighed by the danger of unfair prejudice and confusion of the issues, and is thus inadmissible under Fed. R. Evid. 403.

The Committee Note to the 2000 Amendments to Rule 702 expressly states that, "[i]f the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." While experience is relevant, firearm examiners cannot be permitted to use anecdotal evidence to bolster their claims. Without "information about error rates, the initial factfinder, this Court, and the ultimate one, the jury, have no accurate way of evaluating the testimony." *United States v. Green*, 405 F.Supp.2d at 122 (D. Mass. 2005). A key factor in the *Daubert* analysis is whether the theory and/or technique, which an expert's testimony is premised on, "can be (and has been) tested." *Daubert*, 509 U.S. at 593.

The government has not provided any data in support of Mr. Savage's conclusions or any documentation about his previously conducted tests. Defendant asks the Court to follow *Daubert*, and limit the examiner's testimony. *See, e.g.*, *Saunders*, 826 F.3d at 369–370 (holding that the failure to disclose the fingerprint points an examiner used to find a match was error).

Personal experience in performing tests—without documenting or disclosing that data—is not "sufficient facts or data" to support testimony about the error rate of fingerprinting generally. Nor is the testimony of a single examiner's examinations a reliable or scientific way of determining what the error rate for a kind of examination is generally.

C. *Evidence of Past Tests Is Unfairly Prejudicial and Confusing.*

In addition, any proposed testimony as to whether Officer Savage recovered fingerprints from other firearms is unfairly prejudicial and confusing, and should be excluded under Federal Rule of Evidence 403. The defense anticipates that Officer Savage will give substantial testimony as to the reasons why fingerprints might not be found on a firearm. But any testimony as to the number of tests he previously conducted is not likely to include information about the circumstances of where those firearms were recovered, in what condition, or how long a person was alleged to have handled it before testing. Such broad testimony is likely to confuse the jury and unfairly prejudice them into believing that, because fingerprints were not always recovered in those cases, there are good reasons why fingerprints were not found in this case. Moreover, the jury may hear this testimony and wrongly believe that Mr. Savage's experience is not anecdotal but representative of general trends or error rates in fingerprinting at large, when no such documentation has been disclosed.

## II. MOTION IN LIMINE TO PROHIBIT EVIDENCE OF CASH FOUND ON MR. TAYLOR.

The government may seek to introduce evidence that Mr. Taylor arrested with approximately $1,500 on his person. This evidence is irrelevant to the charge. It however, could create an improper impression of other criminal activity by Mr. Taylor. There is no evidence of the criminal activity. This evidence is irrelevant and more prejudicial than probative and should be barred pursuant to F.R.C.P. 403.

Respectfully submitted,

FEDERAL DEFENDER PROGRAM
John F. Murphy
Executive Director


By: /s/*Piyush Chandra*                    Piyush Chandra
Attorney for Karl Taylor



PIYUSH CHANDRA
FEDERAL DEFENDER PROGRAM
55 E. Monroe St., Suite 2800
Chicago, IL 60603
(312) 621-8337