UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KARL TAYLOR | No. 21 CR 640<br><br>Judge Matthew F. Kennelly |

**GOVERNMENT'S SECOND SUPPLEMENTAL MOTION *IN LIMINE***

The UNITED STATES OF AMERICA, through JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, respectfully submits the following second supplemental motion *in limine* to admit statements.

**I.   BACKGROUND**

On June 22, 2021, CPD officers approached a group of individuals, including defendant Karl Taylor, in the area of North Parkside Avenue and West Iowa Street in Chicago, Illinois. As officers approached defendant, defendant fled on foot up North Parkside Avenue before turning down a gangway. CPD officers, wearing body worn camera recording devices, pursued defendant as he fled. During the course of defendant's flight, defendant threw a firearm – a Remington Arms Co. 9mm semiautomatic handgun, bearing serial number 0026796R51 – into the backyard of a residence at 923 North Waller Avenue. Upon doing so, the Remington Firearm made a loud banging noise as it hit a gate in the backyard, and the magazine dislodged from the gun. A family, including Ms. Sandoval, her husband Mr. Gomez, her sister, her brother-in-law, and others, including three young children bouncing on a trampoline, was in the backyard as the Remington Firearm that defendant threw

landed. The family heard the gun hit a metal canopy in the backyard and quickly ran inside to hide.

Shortly thereafter, the family reemerged and alerted CPD Officers Daniel Grasz and Matthew Ruppert, who promptly recovered the gun, the detached magazine, and a loose round of ammunition from the yard. The family had a surveillance camera active at the time, capturing the events in real time.

Officer Grasz's body worn camera, Officer Ruppert's body worn camera, and the family's surveillance camera all captured portions of a conversation between various members of the family and officers, which occurred seconds after defendant threw the firearm into the family's backyard while officers searched for and recovered the gun, the magazine, and the loose round of ammunition.

More specifically, after the gun hit, the family let out screams and yelled to each other unintelligibly. From the time the gun hit, it took the family about 25 seconds to rush all of the kids inside. Approximately 28 seconds later, the family reemerged outside and called out to officers to alert them to the presence of a bullet they had found on their sidewalk while they were evacuating their yard. Eight seconds later, before the police officers had made it into their yard, the family found the gun in their yard. For the next 64 seconds, the family had a conversation with officers during which they urgently pointed out the firearm and the ammunition and looked for and located the magazine.

I. **MOTION TO ADMIT CERTAIN UTTERANCES CAPTURED ON VIDEO**

The government seeks to admit the relevant portion of the conversation between the officers and the family. At the final pretrial conference, the government

raised the issue of these statements and the Court directed the parties to meet and confer about any disputes. On July 14, 2022, the parties met and conferred and the government understands that defense counsel objects to the admissibility of any statements made after the officers entered the backyard of 923 N. Waller on June 22, 2021. Therefore, this motion only addresses words spoken after the officers' entry into the backyard.

The statements are relevant to the recovery and ownership of the firearm, magazine, and ammunition and the timing of when those items landed in the backyard of 923 N. Waller. Most of the utterances are not hearsay or are offered for a non-hearsay purpose. Others are hearsay but fall within the excited utterance, present sense impression, or then-existing mental state exceptions to the hearsay rule. Below is a chart of the statements made, some of which are captured on more than one camera, some of which are not, along with the government's proposed justification for the statement's admission.[1]

    **A.    The Utterances Are Relevant.**

The statements made during the course of the conversation between the CPD officers and the family members are relevant to the key issues at trial. Under Federal Rule of Evidence 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Here, it will be the government's burden at

---

[1] The government requests leave to supplement its justifications or offer new justifications for each utterance's admission as necessary.

trial to prove that defendant knowingly possessed the Remington Firearm and part of the government's evidence will be the recovery of the firearm, magazine, and ammunition, which corresponded in time with defendant's flight down the alley behind 923 N. Waller Avenue.

While the government cannot anticipate all of defendant's proposed theories of the case, it is possible that defendant will argue that the firearm, magazine, and ammunition were already in the backyard of 923 N. Waller by the time of defendant's flight from the officers, that those items belonged to family members at 923 N. Waller, or that the CPD officers planted the items in the backyard. Therefore, the timing and ownership issues, as well as Ms. Sandoval and Mr. Gomez's audible shock, are of paramount relevance and importance.

The utterances that the government seek to admit prove the timing of the toss of the Remington Firearm, that the family did not own the recovered items, and that the officers did not plant the items recovered. For example, (1) Mr. Gomez exclaims when he first sees the gun, showing that the gun did not belong to Mr. Gomez and was not there prior to defendant's flight down the alley; and (2) the family assists officers in looking for the magazine of the gun, which takes some searching, showing that the magazine did not belong to the family and was not there prior to defendant's flight down the alley. All of the government's proposed evidence has a tendency to make a fact of consequence more or less probable than it would be without the evidence. Those facts of consequence all go to the only element of the charge that the government expects, based on stipulations signed on July 14, 2022, to be at issue at

4

trial: where the defendant possessed the gun (and magazine and ammunition) that was found in the family's backyard.

### B. The Utterances Are Not Unduly Prejudicial.

Defense counsel has informed the government that defendant objects to the introduction of these statements based on unfair prejudice pursuant to Rule 403. Rule 403 does not apply here where the probative value of the evidence is not significantly outweighed by the risk of unfair prejudice.

First, as described below, the government has already excised the only portion of the conversation that is potentially prejudicial. Notably, no part of the conversation addresses the defendant specifically and the portion that the government seeks to admit focuses exclusively on the facts of how the gun and its parts ended up in the family's lawn that night, where they were, and how they were recovered. In addition, both of the police officers and two of the three primary speakers from the family are expected to testify and be subject to cross examination.

Accordingly, there is no prejudice, let alone unfair prejudice, from the portion of the conversation that the government seeks to admit.

### C. Relevance of Each Utterance and Applicable Hearsay Exceptions.

This conversation begins at timestamp 1:39 on Government Exhibit 003, 1:33 on Government Exhibit 004A, and 1:20 on Government Exhibit 006, and lasts just over one minute, approximately 64 seconds.[2] This conversation begins approximately

---

[2] These videos are viewable on the disc of proposed government exhibits tendered to the Court and defendant by the government on July 13, 2022. The government has since produced amended versions that excise a portion of the exchange, as discussed below.

5

8 seconds after the family discovers that there is not only a bullet in their yard but also a gun.[3]

| Speaker | Words Uttered | Justification and Hearsay Exceptions[4] |
|---|---|---|
| Sister | Here, our kids were jumping on the… right here [pointing to the gun]! | Non-hearsay, offered to show (1) the effect on the listener, to explain why police looked where they did in the yard; and (2) to provide context.<br><br>Alternatively, excited utterance, Rule 803(2). |
| Officer Grasz | Where is it at? | Non-hearsay question, offered to provide context |
| Sister | Right here [pointing to the gun]. | Non-hearsay, offered to show (1) the speaker's state of mind; (2) the effect on the listener, to explain why police looked where they did in the yard; and (3) to provide context.<br><br>Alternatively, excited utterance, Rule 803(2). |
| Mr. Gomez | It scare us 'cause it blow over here [gesturing]. | Non-hearsay, offered to show (1) the speaker's state of mind; (2) the effect on the listener, to explain why police looked where they did in the yard; and (3) to provide context.<br><br>Alternatively, prior consistent statement, Rule 801(d)(1)(B)(i), excited utterance, Rule 803(2), and then-existing mental state, Rule 803(3). |
| Sister | Oh my god! Here— | Non-hearsay, offered to show (1) the speaker's state of mind; and (2) to provide context. |

---

[3] When they discover this, Mr. Gomez exclaims, "Woah, the gun! It's right here!," and the family reacts with gasps and unintelligible noises. Again, based on representations from defense counsel, defendant does not challenge the admissibility of that statement by Mr. Gomez, which are admissible both as a present sense impression and excited utterance.

[4] The government agrees to excise certain statements made during the conversation, which it agrees are not relevant to the issues at trial.

| | | |
|---|---|---|
| Ms. Sandoval | And something, the bullet is over there [pointing to the ammunition]! | Non-hearsay, offered to show (1) the effect on the listener, to explain why police looked where they did on the sidewalk; and (2) to provide context.<br><br>Alternatively, excited utterance, Rule 803(2). |
| Officer Ruppert | Hold on. | Non-hearsay command, offered to provide context. |
| Brother-in-law | [U/I] La pistola [Spanish for "the gun"]. | Non-hearsay, not an assertion, offered to provide context. |
| Officer Grasz | I got it [as he picks up the gun].<br><br><br><br>What's your address here? | Non-hearsay, offered to provide context.<br><br>Alternatively, present sense impression, Rule 803(1).<br><br>Non-hearsay, question, offered to provide context. |
| Mr. Gomez | 923 North Waller. | Non-hearsay, offered to show (1) the effect on the listener, to explain why police called out the location they did over the radio; and (2) to provide context. |
| Officer Grasz radio | 1-5-6-1 Charlie | Non-hearsay, offered to provide context. |
| Officer Ruppert | Right here. Ammo [as he picks up the ammunition]. | Non-hearsay, offered to provide context.<br><br>Alternatively, present sense impression, Rule 803(1). |
| Officer Grasz | 923? | Non-hearsay question, offered to provide context. |
| Mr. Gomez | 923. | Non-hearsay, offered to show (1) the effect on the listener, to explain why police called out the location they did over the radio; and (2) to provide context. |
| Dispatch | 1-5-6-1 Charlie | Non-hearsay, offered to provide context. |
| Officer Grasz radio | We have a weapon recovered at 923 North Waller. | Non-hearsay, offered to provide context. |

7

| | | |
|---|---|---|
| | | Alternatively, present sense impression, Rule 803(1). |
| Unk male voice | Thank you. | Non-hearsay, offered to provide context. |
| Brother-in-law | You guys ok? | *Not seeking to admit* |
| Officer Grasz | Yeah, no, we're good, we got [U/I]. | *Not seeking to admit* |
| Dispatch | 923 North Waller, one weapon. | *Not seeking to admit* |
| Officer Ruppert | Yeah. | *Not seeking to admit* |
| Brother-in-law | You guys got him? | *Not seeking to admit* |
| Officer Ruppert | Yeah. Bad guy's going to jail. | *Not seeking to admit* |
| Officer Grasz | Yeah. | *Not seeking to admit* |
| Female voice | U/I | *Not seeking to admit* |
| Mr. Gomez | Is there any way we can get some more protection here? | *Not seeking to admit* |
| Officer Grasz | We're trying. That's why we're over here right now. | *Not seeking to admit* |
| Sister | We have cameras, if you wanna see something? | Non-hearsay question, offered for (1) effect on the listener, explaining why officers then requested surveillance video, and (2) to provide context. |
| Officer Grasz | You do have cameras? | Non-hearsay question, offered to provide context. |
| Sister | Yes. | Non-hearsay, offered for (1) effect on the listener, explaining why officers then requested to see the video right then, and (2) to provide context. |
| Officer Grasz | Can we see 'em right now? Uh, [U/I]. | Non-hearsay question, offered for (1) effect on the listener, explaining why the family then used their phones to access surveillance footage, and (2) to provide context. |
| Officer Ruppert | I'll take it [gun]. | Non-hearsay, offered for (1) effect on the listener, explaining why Officer Grasz handed the gun to Officer Ruppert, and (2) to provide context. <br><br> Alternatively, present sense impression, Rule 803(1). |

8

| | You got it? | Non-hearsay question, offered for (1) effect on the listener, explaining why Officer Grasz then took point on the video footage, and (2) to provide context. |
|---|---|---|
| Officer Grasz | Yeah. [U/I] | Non-hearsay, offered to provide context. |
| Officer Ruppert | Hey! Look for the mag, too. | Non-hearsay command, offered for (1) effect on the listener, explaining why individuals then looked for the magazine, and (2) to provide context. |
| | There's no mag in it. | Non-hearsay, offered for (1) effect on the listener, explaining why individuals then looked for the magazine, and (2) to provide context.<br><br>Alternatively, present sense impression, Rule 803(1). |
| Officer Grasz | Oh. Yeah did something else…? | Non-hearsay question, offered to provide context. |
| Sister | Something [U/I] like right here and [U/I]. | Non-hearsay, not an assertion, offered to provide context. |
| Officer Piecyk over the radio | Hey Grasz, where are you? | Non-hearsay question, offered to provide context and demonstrate how this part of the police activity matched up with the timing of defendant's arrest. |
| Mr. Gomez | Maybe it's over there. | Non-hearsay, offered for (1) effect on the listener, explaining why officers then looked in a particular area for the magazine; (2) to provide context; and (3) the speaker's state of mind and lack of knowledge of the magazine. |
| Officer Grasz | We're in the back outside, backyard of 923 North Waller. | Non-hearsay, offered to provide context.<br><br>Alternatively, present sense impression, Rule 803(1). |
| Officer Ruppert | I got it [as Ruppert spots the magazine]. | Non-hearsay, offered to provide context for why Officer Ruppert |

9

| | | |
|---|---|---|
| | | steps into the grassy section of the yard.<br><br>Alternatively, present sense impression, Rule 803(1). |
| Sister | It's right there [as sister spots the magazine]! | Non-hearsay, offered for (1) effect on the listener, explaining why officers then looked in a particular area for the magazine; (2) to provide context; and (3) the speaker's state of mind and lack of knowledge of the magazine.<br><br>Alternatively, excited utterance, Rule 803(2) and present sense impression, Rule 803(1). |
| | Look! | Non-hearsay command, offered for the same purposes as above. |
| Officer Ruppert | I got it. I got it. | Non-hearsay, offered to provide context.<br><br>Alternatively, present sense impression, Rule 803(1) |
| Officer Grasz | Hey, can I check the cameras please, you said? | Non-hearsay question, offered for (1) effect on the listener, explaining why officers then looked in a particular area for the magazine; and (2) to provide context. |
| Ms. Sandoval | Yeah. We're just nervous, give me one second! | Non-hearsay, offered to show speaker's state of mind.<br><br>Alternatively, excited utterance, Rule 803(2). |
| Officer Grasz | No, I'm sorry. | Non-hearsay, offered to provide context. |
| Ms. Sandoval | The kids were jumping on the trampoline. We just heard something fast. We just run inside. | Non-hearsay, offered to show speaker's state of mind.<br><br>Alternatively, (1) prior consistent statement, Rule 801(d)(1)(B)(i) and (2) excited utterance, Rule 803(2). |

10

| | | |
|---|---|---|
| Ms. Sandoval | You got it? Show it to him. [teenage son hands Officer Grasz a phone] | Non-hearsay question and command, offered for (1) effect on the listener, explaining why boy handed Officer Grasz the phone; and (2) to provide context. |

As detailed above, nearly all of the utterances during this conversation are either not hearsay because they are not assertions of fact or are offered for a non-hearsay purpose. For the family's statements that are hearsay, various exceptions to the hearsay rule apply, with the excited utterance exception applying most prevalently. Under Federal Rule of Evidence 803(2), hearsay is admissible if the statement "relat[ed] to a startling event or condition, made while the declarant was under the stress of excitement that it caused." For an out-of-court statement to qualify under the excited utterance exception to the hearsay rule, "(1) a startling event must have occurred; (2) the declarant must make the statement under the stress of the excitement caused by the startling event; and (3) the declarant's statement [must] relate[] to the startling event." *United States v. Zuniga*, 767 F.3d 712, 716 (7th Cir. 2014) (citing *United States v. Joy*, 192 F.3d 761, 766 (7th Cir. 1999)).

During the brief conversation transcribed above, the family was still under the stress of two startling events: (1) the firearm flying into their backyard (which they believed at the time to be a bullet), and (2) the discovery that the object thrown was actually a gun, and the gun was in their backyard. In the videos, the family is visibly and audibly shaken. Ms. Sandoval and her sister are so shocked that they each have one hand over their hearts as officers approach. The sister has to catch her breath. Ms. Sandoval, Mr. Gomez, and the sister speak with their eyes wide, with emphatic

11

pointing and gestures. Mr. Gomez explicitly stated that they were scared, and Ms. Sandoval explicitly stated that they were nervous. The family's excitement is understandable, as, just moments before, they were enjoying a get-together in the backyard with young children playing on a trampoline only to be interrupted by an individual (defendant) leading police on a chase in the neighboring alley resulting in the toss of a loaded firearm into their backyard. As the video reflects, Ms. Sandoval had to rush out to the trampoline to assist her two-year old daughter and escort her to safety.

On July 13, 2022, this Court denied the government's supplemental motion *in limine* to preclude admission of defendant's post-arrest statements, (R. 36-1). R. 40. The Court found that those statements, which began after his arrest and lasted for approximately 90 seconds, were relevant to his motive for running from the police and were hearsay subject to the exception for excited utterances.

The Court's findings on the applicability of the excited utterance hearsay exception should apply here. In the government's proposed video exhibits, the conversation between the "scared" and "nervous" family members and the officers begins approximately one minute after a family discovers that there is a firearm in their backyard next to where their children had been playing, and not much longer after the firearm actually flew into their backyard, while there are still visible and audible signs of stress and excitement. All of the statements relate to the startling events and none of the statements relate to or discuss defendant.

12

**II.  CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court grant the government's second supplemental motion *in limine*.

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By:  */s/ Misty N. Wright*
MISTY N. WRIGHT
RICHARD M. ROTHBLATT
Assistant United States Attorneys
219 South Dearborn Street
Chicago, Illinois 60604
(312) 353-5300